THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MIGUEL RIVERA, et al.,**

    **Plaintiffs,**

    v.

**JORGE UMPIERRE-CORREA, et al.,**

    **Defendants.**

**Civil No. 25-1278 (ADC)**

**OPINION AND ORDER**

**I.   Introduction**

Pending before the Court is Jorge Umpierre-Correa ("Judge Umpierre") and Jorge Ortiz's ("Mr. J. Ortiz," and together with Judge Umpierre, "defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[1] **ECF No. 24**. Defendants seek the dismissal of the complaint filed by on May 22, 2025, by *pro se* plaintiffs Miguel Rivera ("Mr. Rivera"), Merarys Díaz ("Mrs. Díaz"), Jorge Colón ("Mr. Colón"), Pedro Nieves-Maldonado ("Mr. Nieves"), Héctor Ortiz ("Mr. H. Ortiz"), and Javier González ("Mr. González," and together with the others, "plaintiffs"). **ECF No. 1**.

In their complaint, plaintiffs bring forth several claims against defendants under 42 U.S.C. § 1983 for alleged deprivations of constitutional rights. To wit, plaintiffs allege that they

---

[1] It is evident from the record that defendant Although it is evident from the record that defendant Jorge Umpierre-Correa is a judge serving in the Puerto Rico state judiciary. Accordingly, he will be alluded to as Judge Umpierre in this Opinion and Order.

were deprived of their rights under the First, Fourth, Fifth, and Sixth Amendments of the United States Constitution. The basis for these claims is an ongoing criminal prosecution against Mr. Rivera that is pending in Puerto Rico's Court of First Instance, during which he was found in contempt of court for failure to obey the orders of the presiding trial judge, Judge Umpierre, and was incarcerated for a number of days. Mr. Rivera's co-plaintiffs further attempted to record parts of the proceeding inside the courtroom, contrary to the court's rules and procedures, and court security officers prevented them from doing so. Plaintiffs request that the Court award them compensatory damages in the amount of $500,000, punitive damages in the amount of at least $2,000,000, and legal fees and costs.

For the reasons set forth below, the motion to dismiss is **GRANTED**.

## II. Procedural Background

Invoking this Court's federal question jurisdiction under 42 U.S.C. § 1983, *pro se* plaintiffs filed their complaint on May 22, 2025. **ECF No. 1**.[2] Although plaintiffs included a total of ten named defendants in their complaint, they only submitted proposed summons for Judge Umpierre and Mr. J. Ortiz, which were issued on May 23, 2025. **ECF No. 3**. That same day, the Clerk of Court notified plaintiffs that many of their exhibits submitted with the complaint were in the Spanish language, and that they needed to seek leave of the Court to submit these in Spanish under L. Civ. R. 5. **ECF No. 4**. On June 13, 2025, Mr. Rivera filed a motion for preliminary

---

[2] Plaintiffs paid the initial filing fee, are not proceeding *in forma pauperis*, and have not requested the appointment of counsel.

injunction and an unsworn statement under penalty of perjury in support. **ECF Nos. 5, 6**. On June 18, 2025, plaintiffs requested an extension of time to file partial translations of the Spanish language documents submitted with the complaint. **ECF No. 8**.

The Court held in abeyance plaintiffs' motion for preliminary injunction pending notice to the adverse parties and their response to the motion. **ECF No. 7**. The Court further granted plaintiffs until July 9, 2025, to file the translations at issue in accordance with L. Civ. R. 5(c), warning plaintiffs that it could not consider documents not in the English language under applicable law and court rules. **ECF No. 9**.

On July 7, 2025, Mr. Rivera filed several motions and documents with the Court, among them: copies of the executed summons on Judge Umpierre and Mr. J. Ortiz (**ECF Nos. 11, 16**); a motion requesting this Court for an order recusing Judge Umpierre from presiding the Puerto Rico court proceeding and staying said proceeding (**ECF No. 12**); a motion to expedite consideration of the preliminary injunction request due to upcoming hearings dates and deadlines in the Puerto Rico court proceeding (**ECF No. 13**); and a motion seeking partial reconsideration of the Court's Order regarding the need for certified translations (**ECF No. 15**). As to this last motion, the Court granted it in part, allowing "partial translations of [plaintiffs'] affidavits, but [requiring] all court records presented as exhibits in this case (including motions, court decisions, etc.) [to] be fully translated for the Court's consideration." **ECF No. 19**. The Court denied the motion to expedite the preliminary injunction request as defendants had not yet appeared and stated their positions**. ECF No. 21**.

Defendants appeared on July 17, 2025, represented by the Commonwealth of Puerto Rico's Department of Justice. **ECF No. 22**. They requested an extension of time to answer the complaint and respond to the pending motion for preliminary injunctive relief. *Id.* The Court granted the extension. **ECF No. 23**. On July 29, 2025, Mr. Rivera filed three motions. First, he moved to disqualify defendants' legal representation. **ECF No. 26**. He also informed the Court that Judge Umpierre had recused himself from the Puerto Rico court proceeding, but claimed that his replacement also needed to be recused and requested that this Court order him to do so, and further, that it order the stay of the state proceedings. **ECF No. 28**. Finally, he moved this Court for: (i) the issuance of an order to compel the state court to release transcripts and recordings of the proceedings against him; and (ii) a further extension of time to submit the translation of the exhibits to the complaint, justifying the extension because plaintiffs "were not provided adequate time or resources" to translate them. **ECF No. 27**.

On July 31, 2025, defendants filed their opposition to plaintiff's motion for a preliminary injunction. **ECF No. 25**. A few days later, on August 4, 2025, defendants filed further oppositions to the motion to disqualify their legal representation, to the motion to compel and for extension of time, and the motion for recusal of the state court judge and for stay of said proceedings. **ECF Nos. 29, 30, 32**. Defendants also moved to strike these motions insofar as Mr. Rivera purported to file them on behalf of his fellow co-plaintiffs, as he is not a licensed attorney authorized to practice before the Court. **ECF No. 31**.

On August 14 and 15, 2025, the Court denied the motion to disqualify defendants' counsel and granted defendants' motion to strike. **ECF Nos. 34, 36**. The Court also granted in part the motion for extension of time to give plaintiffs until August 22, 2025, to submit the translations at issue. **ECF No. 35**. However, the Court denied all other relief requested in the motion related to compelling discovery from the state court. *Id.*

Then, on October 3, 2025, plaintiffs filed two motions: (i) a motion to compel this Court to explain its denial of their motion to disqualify (**ECF No. 37**); and (ii) a motion seeking a declaration that the Court is proceeding under Article III of the U.S. Constitution and the correction of the record insofar as plaintiffs were proceeding "sui juris" and not "pro se." **ECF Nos. 37, 38**. Defendants, on the other hand, filed a motion on October 21, 2025, to deem their motion to dismiss unopposed, given plaintiffs' failure to file an opposition within fourteen days of its filing as required under L. Civ. R. 7(b). **ECF No. 39**.

On October 22, 2025, the Court granted defendant's motion and deemed the motion to dismiss unopposed. **ECF No. 40**. The Court also ordered plaintiffs to show cause why the complaint should not be dismissed without prejudice as to the other eight co-defendants named in the complaint for failure to serve process. **ECF No. 41**. The next day, the Court denied both of plaintiffs' October 3rd motions. **ECF No. 42**.[3]

---

[3] In its Order denying the motions, the Court mistakenly characterized plaintiffs' position as requesting to proceed "sui generis" when the correct term was "sui juris." **ECF No. 42** at 1. The distinction remains irrelevant, as plaintiffs are, by definition, proceeding *pro se*. *Id.*, at 3.

### III. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint "must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation modified). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 132 (D.P.R. 2007) (citing *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)).[4] Nonetheless, the burden remains on plaintiffs, as the "party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017).

---

[4] Although defendants' motion suggests that it is launching a factual jurisdictional challenge (*see* **ECF No. 24** at 3-4), its arguments do not rely on contradicting the truth of the complaint's factual averments. Therefore, the Court will treat the motion as a facial challenge.

## IV. Discussion

### A. The well-pleaded facts.

According to the well-plead allegations in plaintiffs' "statement of claim" section of the complaint (**ECF No. 1** at 8, 10-16), which the Court takes as true for purposes of its analysis, plaintiffs attended a hearing in the Court of First Instance, Fajardo Part, on April 2, 2025. Judge Umpierre presided over the hearing. At some point, he called Mr. Rivera and his court-appointed attorney, Alexis Javier López, to come forward. One of the bailiffs instructed Mr. Rivera to "cross the bar" (presumably, from the public seating section) and approach the podium. Mr. Rivera refused and attempted to question the court's "personal jurisdiction" over him. The bailiffs repeated their instructions, "yelling" and "surrounding him in a menacing and threatening manner." Mr. Rivera inquired from Judge Umpierre if he had read a certain "notification/motion" he had filed with the Court. Judge Umpierre told Mr. Rivera he had referred the filing to the prosecution, because "they were the ones who had to prosecute the case."

Judge Umpierre assigned a new criminal defense attorney for Mr. Rivera. Mr. Rivera did not agree because he insisted on his right to self-representation. Judge Umpierre then yelled at Mr. Rivera and instructed him to remain silent. Judge Umpierre asked the prosecution how much time they would need to respond to Mr. Rivera's filing. The prosecution asked to defer responding to the motion until Mr. Rivera's new attorney had been assigned. Judge Umpierre agreed and scheduled a hearing date for April 15, 2025. He warned Mr. Rivera that if he did not

show up at the hearing, he would be found in contempt of court and would issue a warrant for his arrest.

On April 8, 2025, Mr. Rivera and his spouse, co-plaintiff Mrs. Díaz, visited the courthouse to file motion requesting more time to prepare for the upcoming hearing. Mr. Rivera was recording his visit to the courthouse with his cellphone. A female armed officer told Mr. Rivera that he could not record and attempted to seize his cellphone. Mr. Rivera countered that this was an attempt to violate his First and Fourth Amendment rights. The officer called for backup. One officer seized Mr. Rivera's cellphone and erased the video recording. Co-plaintiff Ms. Díaz was "forced out" of the clerk of court's office against her will. Mr. Rivera was unable to file his document with the court.

On April 14, 2025, Mr. Rivera called his court-appointed attorney, Danny Meléndez-Lebrón, to inquire on the case's status and why he had not contacted Mr. Rivera about the upcoming hearing.[5] Attorney Meléndez advised Mr. Rivera that he would be better off obeying Judge Umpierre's orders and paying all the fines. Mr. Rivera asked about his motion and his arguments as to how the court has no jurisdiction over him, to which the attorney responded by telling him that "the judge had automatic jurisdiction." He pushed back against this based on his understanding of the law. Attorney Meléndez then told Mr. Rivera not to "show up to court" and that "he would be arrested," which Mr. Rivera seems to have taken as actual advice. When

---

[5] Attorney Meléndez was included in the complaint as a co-defendant but was never served with process.

asked by Mr. Rivera why he was advising him not to show up, his attorney simply stated that he would be at the hearing and ended the conversation.

The next day, Mr. Rivera and the rest of the plaintiffs attended the hearing in Mr. Rivera's case. When his case was called, Mr. Rivera again refused to cross the bar and began arguing against the court's personal jurisdiction. Judge Umpierre and the court bailiff instructed plaintiff that he needed to approach the podium because his voice was not being recorded. Mr. Rivera moved closer to the bar but did not cross it and continued to speak again. Judge Umpierre ordered that he cross the bar or else be held in contempt. Mr. Rivera then kneeled and asked for the definition of contempt. Judge Umpierre then proceeded to order that Mr. Rivera be arrested for contempt of court and imposed a ten-day sentence of imprisonment.

Other bailiffs surrounded the rest of the plaintiffs and warned them to stay back. Judge Umpierre then ordered them removed. The bailiffs then escorted the rest of the plaintiffs to outside the courthouse. Outside, they made a "Facebook live" recording and were quickly told by armed officers that it was not permitted for them to record the proceedings that had transpired. Approximately three minutes later, the armed officer returned from the courthouse to tell the plaintiffs that Judge Umpierre had ordered them back into the courtroom. The plaintiffs complied voluntarily.

Once in the courtroom, Judge Umpierre ordered that plaintiffs identify themselves "under threat of arrest and incarceration." Judge Umpierre informed them that court staff had been monitoring their videos and ordered the armed officers to seize their cellphones. Co-

plaintiff Mr. González asked Judge Umpierre what law prohibited them from recording a public hearing. Judge Umpierre replied with the "PECAM" rules available at the court's website. He then told the plaintiffs that he would order their phones to be seized upon entry to the courthouse if they decided to attend future hearings. He then ordered them to leave the courthouse.

The plaintiffs (except for Mr. Rivera) immediately filed a complaint against Judge Umpierre in Puerto Rico's Office of Administration of Tribunals. The next day, on April 16, 2025, co-plaintiff Mrs. Díaz filed a writ of habeas corpus on behalf of Mr. Rivera before the Puerto Rico Supreme Court. Six days later, the Supreme Court denied the writ via resolution signed by the court's secretary, Javier O. Sepúlveda.[6] The resolution warned Mrs. Díaz to not represent other persons before legal institutions as she was not a licensed attorney. Between April 17 and May 1, 2025, co-plaintiff Mr. González proceeded to file a request for information on Judge Umpierre with the Judge's Compensation and Retirement Division in Washington, D.C., a criminal complaint before the Civil Rights Division of the U.S. Department of Justice, and a complaint against Judge Umpierre before the Office of the Attorney General of Pennsylvania. The criminal complaint was rejected three days after its filing, and both the request for information and the Pennsylvania complaint have gone unanswered by the corresponding authorities.

---

[6] Mr. Sepúlveda was included in the complaint as a co-defendant but was never served with process.

On April 29, 2025, Mrs. Díaz informed Mr. González that Mr. Rivera had been ordered imprisoned until May 5, 2025, that he had been ordered to retain and pay for an attorney given his rejection of his court-appointed one, and that he was to comply upon penalty of imprisonment. Mr. Rivera was released on May 1, 2025, six more days than the ten-day sentence pronounced orally by Judge Umpierre at the April 15 hearing and five days earlier than the April 29 order had stated.

## B. Grounds for dismissal.

Defendants' motion to dismiss relies on several grounds. First, that *Younger v. Harris*, 401 U.S. 37 (1971), requires the Court to abstain from exercising its jurisdiction over plaintiffs' claims. Second, that all claims related to Mr. Rivera's incarceration for contempt of court are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because they stem from an order that has not been reversed or invalidated. Third, that Judge Umpierre is entitled to judicial immunity from all claims that stem from his exercise of judicial duties as a state court judicial officer. Fourth, that Mr. J. Ortiz is entitled to quasi-judicial immunity because when he arrested Mr. Rivera he was acting in his official capacity, in exercise of his courtroom security duties, and at the directive of the presiding judge. Fifth, that Mr. J. Ortiz is further entitled to dismissal of the claims against him because the allegations within the complaint fail to make any specific reference to him or his actions. Sixth, that plaintiffs do not have a First Amendment right to record judicial proceedings. Seventh, that Mr. Rivera's Sixth Amendment rights to self-representation were not violated given his disruptive behavior. Eighth, that plaintiffs have

failed to state a Fifth Amendment due process claim because defendants are not federal officers. Ninth, that Mr. J. Ortiz is entitled to qualified immunity. Tenth, that many other claims made by plaintiffs in their complaint are frivolous. And finally, that the allegations are insufficient to establish co-plaintiffs Mr. González, Mr. Nieves, Mr. Colón, Mr. Rodríguez, and Mr. J. Ortiz's standing under Article III of the U.S. Constitution.

Plaintiff did not respond to the motion to dismiss. *See* **ECF No. 40** (deeming motion unopposed). As a result, plaintiffs have waived any arguments in opposition to the motion to dismiss by not filing a timely response. *See* L. Civ. R. 7(b) ("Unless within fourteen (14) days after the service of a motion the opposing party files a written opposition to the motion, the opposing party shall be deemed to have waived any objection to the motion."); *see also F.D.I.C. v. Anchor Properties*, 13 F.3d 27, 31 (1st Cir. 1994) ("[A] litigant's pro se status does not absolve him from compliance with the Federal Rules of Civil Procedure. This applies with equal force to a district court's procedural rules." (citation modified)); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985) (the "right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." (citation modified)). The Court thus proceeds to analyze the merits of defendants' arguments.

   1.   *Younger* **abstention.**

"Abstention" refers to a situation where a federal court declines to exercise its jurisdiction over a case or controversy. It is an exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United*

*States*, 424 U.S. 800, 817 (1976). In *Younger v. Harris*, the Supreme Court ruled that federal courts may not enjoin ongoing state criminal proceedings absent exceptional circumstances. This rule has extended to apply to other types of pending state proceedings, including certain civil and administrative proceedings. *See Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986).

More recently, in *Sprint Commc'ns, Inc. v. Jacobs*, the Supreme Court elaborated on the types of cases where abstention was required:

> *Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S. Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L.Ed.2d 1 (1987).

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). In *Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015), a panel of the First Circuit devised a three-step methodology to gauge the appropriateness of abstaining under *Younger*. This methodology essentially asks: (1) whether the state proceeding falls into one of the three types of proceedings identified in *Sprint*; (2) whether the three so-called *Middlesex* factors[7] favor abstention, that is, "when the requested relief would [(i)] interfere with an ongoing state judicial proceeding; [(ii)] that implicates an important state interest; and [(iii)] that provides an adequate opportunity for the federal plaintiff

---

[7] In reference to *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

to advance his federal constitutional challenge," *Verizon New England, Inc. v. Rhode Island Dep't of Lab. & Training*, 723 F.3d 113, 116 (1st Cir. 2013) (quoting *Rossi v. Gemma*, 489 F.3d 26, 34 (1st Cir. 2007)); and (3) whether there is any "isthmian" exception that would make abstention inappropriate. *Sirva*, 794 F.3d at 192-93.

Applying the first step in this framework, it is clear that there is a parallel, ongoing criminal proceeding in Puerto Rico courts against Mr. Rivera, and all of plaintiffs' alleged harms stem from judicial orders issued during and directly related to the conduct of that proceeding. And so the first requirement is met.

As to the *Middlesex* factors, plaintiffs seek an award of monetary damages to tune of several millions of dollars against the former presiding judge, the courtroom bailiffs, and other court security personnel for enforcing judicial orders and the rules of courthouse conduct. Separately, they also seek specific injunctive relief aimed at controlling the conduct of proceedings and the recusal of the presiding judge. *See* **ECF No. 5** at 4; **ECF No. 28.** Under the traditional understanding of "interference," issuing an injunction to stay proceedings and recuse the presiding judge would fall squarely within *Younger's* ambit. On the other hand, granting the monetary relief plaintiffs seek would not directly enjoin the pending criminal court proceedings. *See, e.g., Río Grande Cmty. Health Ctr., Inc. v. Rullán*, 397 F.3d 56, 70 (1st Cir. 2005) ("Interference is . . . usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so."). However, a multi-million-dollar award against a judge

and the courthouse bailiffs for enforcing courtroom discipline would be highly disruptive to the ongoing proceeding.[8]

It is also true that to find in plaintiffs' favor, the Court would have to at least determine that the contempt order and the order prohibiting plaintiffs from recording the proceedings were unlawful. That would likely entail passing judgment on the constitutionality of the "PECAM" rules issued by the Puerto Rico Supreme Court and Canon 15 of its Canon of Judicial Ethics. Such relief would be, as a practical matter, highly disruptive to the pending proceedings against Mr. Rivera—not to mention all other Puerto Rico court proceedings. Further, the proceeding to which Mr. Rivera is subjected implicates the Commonwealth of Puerto Rico's interest in enforcing its own laws, the judicial contempt powers of its judges, and its ability to regulate public access to its courts—all important government interests.[9] Thus, both the injunctive and monetary relief requested would interfere with the Puerto Rico court proceedings. Finally, as Mrs. Díaz's habeas corpus proceeding before the Puerto Rico Supreme

---

[8] Although more relevant to defendants' judicial immunity argument, it bears mentioning that exposing a judge to a damages suit like plaintiffs' for maintaining order and decorum in his or her courtroom would open the door to an "avalanche of suits, most of them frivolous but vexatious, [and] would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." *Forrester v. White*, 484 U.S. 219, 226–27 (1988) (citation omitted).

[9] The contempt order against Mr. Rivera is a textbook example of "direct" or "summary" contempt, and a court's inherent powers to punish it is as established as it is longstanding. *See In re Terry*, 128 U.S. 289 (1888); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.2 (1994) ("Direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily"); *Pueblo v. Lamberty González*, 112 P.R. Dec. 79, 81, 12 P.R. Offic. Trans. 102, 105-06 (1982) (listing statutory sources for the Puerto Rico courts' "power to punish for contempt" and noting that "[i]n Puerto Rico, the inherent power of courts to punish for contempt is also recognized.").

Court demonstrates, Mr. Rivera has adequate opportunity to litigate his constitutional claims in his criminal proceeding or in a related proceeding within the Puerto Rico court system, without risking the undue intervention of a federal court. The same can be said of the rest of plaintiffs and their freedom of expression and due process claims.

As to the last of the *Younger* factors, plaintiffs have waived any argument as to the application of any exception to abstention, and the Court has found none from its review of the pleadings. Accordingly, the Court finds that *Younger* abstention is appropriate as to all requests for relief, both monetary and equitable.

## V. Conclusion

The Court has no need to analyze defendants' remaining arguments for dismissal.[10] For the foregoing reasons, the Court abstains under *Younger v. Harris*, 401 U.S. 37 (1971) and orders that the above-captioned case be **DISMISSED WITHOUT PREJUDICE**.[11] Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 22nd day of December, 2025.

                                                 **S/AIDA M. DELGADO-COLÓN**
                                                 **United States District Judge**

---

[10] Plaintiffs' requests for preliminary injunctive relief (**ECF Nos. 5, 6**) and for the Court order the recusal of the presiding judge in, and the stay of, the criminal proceeding against Mr. Rivera in Puerto Rico court (**ECF No. 28**) are denied given the Court's decision to dismiss the complaint.

[11] Plaintiffs failed to comply with the Court's October 22, 2025 Order to show cause. **ECF No. 41**. Accordingly, all claims against defendants "H. Rodríguez," "F/N/U Díaz," Javier O. Sepúlveda, Danny Meléndez-Lebrón, Feliciano Rivera, Daniel German, Xiomara P. Suazo, and Héctor Olmos are dismissed without prejudice. Fed. R. Civ. P. 4(m).